Ray Potter Perry died, a resident of this state. From the assessment of transfer inheritance tax in respect of his estate, *Page 177 
his executor, the First National Bank and Trust Company of Montclair, appeals.
In assessing the tax the comptroller included as a part of the taxable estate, the corpus of a trust fund created by decedent on June 14th, 1924, on the ground that the transaction was a transfer of property intended to take effect in possession or enjoyment at or after the death of the transferor, and hence taxable under the statute. P.L. 1922 p. 293, as amended.
Whether or not such determination was correct, is the question at issue on this appeal.
On the date mentioned decedent executed and delivered to the trustee named therein (the same corporation which is now his executor and the present appellant), an agreement or deed of trust, together with the securities named therein and intended to be thereby transferred, aggregating about $100,000 in par value.
By the terms of this trust deed, the income was to be paid to his wife during her life; at her death to the donor (decedent), if he then survived, for his life; at his death (or at the wife's death, if he predeceased her) to the donor's children until they respectively attained age thirty. The principal was to be paid to the children at age thirty, or to their issue. Power to terminate the trust and receive the principal was given to the wife, subject to consent by the donor if he were still alive. Power to terminate the trust and receive the principal was given to the donor if he survived the wife.
Contemporaneously with the execution of this instrument there was executed and delivered by the wife a similar instrument with converse provisions, together with securities theretofore owned by her, practically identical in total value ($100,000), with the trust fund under the husband's deed. The provisions of this deed were the same as those of the husband's deed, with the exception that the relative positions of the husband and wife, as donor and beneficiary, were exchanged. *Page 178 
The wife survived the husband; so also did the children.
The appellant strenuously argues that the two deeds are not to be considered together; that the question of taxability must be determined from a consideration solely of the husband's deed. The argument is untenable. It is indubitable, from a consideration of the two instruments and the evidence, that both are parts of one whole transaction, which was engineered by decedent. It has been repeatedly held, and is well established by the decisions in this and other states, that it is the substance of the transaction which is to be considered, not merely its form. See In re Hall,94 N.J. Eq. 398 (at p. 404); 119 Atl. Rep. 669; In re Kraft,103 N.J. Eq. 543 (at p. 549); 143 Atl. Rep. 764; Moore v.Bugbee, infra; Congregational Home Missionary Society v.Bugbee, 101 N.J. Law 214; 127 Atl. Rep. 192.
No other conclusion would be rational, under our statute. The thing which the statute taxes is not the particular instrument
executed by the decedent, but the transfer actually made. The question is what has the decedent done? Has he, considering everything that was done in the entire transaction, effectuated a transfer of the kind made taxable by the statute? Moreover the statute specifically mentions "bargain."
The two deeds are therefore to be considered together, as parts of one whole transaction.
The comptroller bases his determination of taxability upon the following premises: First, that the transfer of a remainder after a life income reserved to the donor, is taxable under the statute; second, that the transaction under scrutiny constitutes, in substance, just such a transfer.
The legal premise is of course settled law. Carter v.Bugbee, 91 N.J. Law 438; 103 Atl. Rep. 818; affirmed,92 N.J. Law 390; 106 Atl. Rep. 412; In re Harvey, 2 N.J. Mis. R. 247;129 Atl. Rep. 393; affirmed, sub nom. Moore v. Bugbee, 3 N.J. Mis.R. 435; 128 Atl. Rep. 679; affirmed, 102 N.J. Law 720;135 Atl. Rep. 919.
It is deemed also that the second premise is sound, and that the transfer is therefore taxable. *Page 179 
Consideration of the two instruments shows that the transaction involved, in actual substance and fact, a transfer by the husband to the wife, of the interest during his life in the fund of approximately $100,000; also a transfer by the husband of the interest after his death in the same fund, to the wife (who had the option to appropriate the entire fund after his death) or the children, or both; and at the same time in exchange, the wife transferred to the husband the right to receive in exchange, during his life, the income from the wife's fund, also of approximately $100,000.
That it is the substance, not the form, of the transaction which is controlling, has already been noted. The fact that the life income is the subject of a grant back to the donor by the donee, instead of a technical reservation to himself by the donor, is matter of form only: in substance and legal effect from the standpoint of the Tax act, they are identical and a transfer involving the former is just as taxable as one involving the latter. In re Harvey; Moore v. Bugbee, supra; American Boardof Commissioners, c., v. Bugbee, 98 N.J. Law 84;118 Atl. Rep. 700. The fact that the life income received by the husband was not the actual income from the particular $100,000 fund which he transferred but came from a different $100,000 fund, is likewise deemed a difference of form only and not of substance. For all practical purposes, that which he received was substantially the same as the income from the fund he transferred.
The appellant cites, as authority to the contrary, In reHoneyman, 98 N.J. Eq. 638; 129 Atl. Rep. 393; which was affirmedsub nom. Bugbee v. Board of Missions, c., 4 N.J. Mis. R. 99;131 Atl. Rep. 924; 103 N.J. Law 173; 134 Atl. Rep. 915. The transfer in the Honeyman Case, however, was entirely different: it was an immediately operative transfer of the complete interest in a fund, direct to the donee, in exchange for the donee's agreement to pay to the donor a specified annual sum for his life (and to his wife for her life if she survived him), which sum was in fact equal to six per cent. of the fund transferred. Was that transfer taxable as a transfer "intended to take effect in possession *Page 180 
or enjoyment at or after the death of the transferor?" On the one hand the difference between getting back the income from, or interest on, the thing given, and getting back a specified annual sum which is in fact equal to such income or interest, seems a mere difference of form but not of substance; and the statutory use of the word "intended" would indicate that the intent of the transferor should be the controlling test. Cf. In re Bottomley,93 N.J. Eq. 202 (at p. 207); 111 Atl. Rep. 605. On the other hand, however, there was an actual transfer, direct, complete and immediate, and the enjoyment of the actual property transferred was not postponed until the death of the transferor, even though no net financial benefit would accrue to the transferee until then. Taxing acts being subject to strict interpretation, the taxpayer was entitled to the benefit of the doubt. The transfer accordingly was held not taxable, and a principle was suggested, to wit, whether the thing reserved or given back to the transferor for his life "is an interest in, or identifiably tied up with, the very thing transferred," — as a test in cases of that kind. The present case, however, is not of that kind; the transfer is not direct, complete and immediate; the actual transfer of possession to the beneficiary is postponed until the transferor's death and in substantial effect the enjoyment of the subject of the transfer is retained by the transferor for his life. The Honeyman determination therefore is neither controlling nor applicable in the present case.
If the case is considered from a somewhat different standpoint, the taxability of the transfer will perhaps appear somewhat more clearly.
Under the statute as it existed at the date of this transfer, a tax was imposed upon a transfer (1) if it was made in contemplation of death, or (2) if it was intended to take effect in possession or enjoyment at or after the death of the transferor.
If, in the instant case, the decedent had made the transfer in contemplation of death, then the only question as to its taxability would have been the question as to whether an *Page 181 
adequate consideration had been received by the transferor in exchange. This was precisely the situation in In re Kraft,103 N.J. Eq. 543; 143 Atl. Rep. 764, which presented the like circumstances of two contemporaneous, converse trusts, with "crossed" life estates.
Here, the transfer was not made in contemplation of death; but it does come within the language of the other clause. It was a transfer of the fund, in praesenti, to the trustee, with direction to the trustee to pay the income to the wife for her life, at her death to the donor (if he survived) for his life, and to pay the principal to the children after the death of both the husband and wife. This constituted, it is true (assuming no power of revocation — as to which, more hereafter), a present, irrevocable gift of equitable life estate and equitable remainder; but it is also true that it was, as to the corpus, a transfer "intended to take effect in possession or enjoyment at or after the transferor's death."
The trustee was the transferor's agent (even though the agency was irrevocable), and as such agent he was to turn over the legal title and possession of the fund to the children at or after the transferor's death; and of course the transferor intended that which he directed. The transfer is therefore taxable under the language of the statute.
Although a transfer may be taxable under the literal language of the statute there may be considerations which will lead to a conviction that the legislature did not intend it to be taxable. For instance, a sale and conveyance for full and adequate price contemporaneously received by the grantor, if made while in the knowledge of the near approach of death, would be taxable under the language of the statute; but obviously the legislature did not intend that it should be taxed. Is there any reason to conclude the absence of legislative intent for the taxation of the transfer sub judice?
Consideration of the provisions, and the history, of this legislation leaves no doubt but that the general object and purpose of the legislature was to tax not only those transfers, both testate and intestate, by which property, on the death of its owner, most frequently vests in new ownership, *Page 182 
but also all transfers made by the owner during his life which would substantially take the place and stead of a testamentary disposition or an intestate succession — all transfers made during life with the intent and purpose of accomplishing thereby approximately the same results which would ordinarily be effectuated by will or intestate succession.
There is therefore no ground for excluding the present transfer from the operation of the express statutory provisions; for there is no doubt whatever but that this transfer not only does take the place of testamentary disposition, but was made with that intent and purpose. This is clear when it is considered that it sufficiently appears from the record that the contemporaneous transfer by the wife was the result of the husband's idea and procurement, and that the situation resulting from the provisions of the two deeds of transfer was that the husband retained or enjoyed during his life the income from a fund equal to the income he transferred to his wife; he reserved to himself subject to the consent of his wife (a consent apparently not difficult to obtain), the power to revoke the entire transfer during the joint lives of himself and wife; he reserved to himself (if he survived) the uncontrolled power to revoke after his wife's death. Cf. In re Brockett, 111 N.J. Eq. 183.
In view of the determination (contrary to appellant's contention), that the two deeds of trust were both parts of a single transaction and are to be considered together, it is only fair to consider what the decedent received in exchange for the transfer he made; whether his estate was in anywise increased by the transaction; whether the comptroller erred in assessing the tax upon the full value of the property transferred. If in exchange for a transfer taxable under the statute the transferor receives consideration of actual financial value, the value of such consideration should be deducted in computing the tax on the transfer. Cf. In re Kraft, 103 N.J. Eq. 543; 143 Atl. Rep. 764;In re Huggins, 96 N.J. Eq. 275; 125 Atl. Rep. 27.
Such consideration leads to the conclusion that no error appears in that behalf; that the transferor's estate received *Page 183 
nothing of such value as to require a deduction from the value of the estate he transferred. He received an estate for his life in $100,000 worth of property, but he transferred an estate for his wife's life in an equal amount of property. There is no evidence to show that at the time of the transaction his expectancy of life was longer than hers. If anything, the evidence shows the contrary, for he in fact predeceased the wife. It does not appear therefore that the value of the life estate he received was greater than that of the life estate he transferred. The same thing is true as to the respective contingent secondary life estates (or contingent remainders, if the power of revocation is taken into consideration). As to the ultimate remainders to the children, his estate of course received nothing in exchange for this: the wife's deed also gave these remainders to the children.
The tax will be affirmed, with costs.