Francis E. Brockett, a resident of this state, died testate in 1929, leaving no estate after payment of his debts and administration expenses. In 1924 he had made a deed of trust whereby he transferred to trustees property appraised by the comptroller at $221,534.21. Tax was assessed by the comptroller, under the statute (P.L. 1909 ch. 228, as amended), computed on the full value of this property, on the ground of a transfer intended to take effect in possession or enjoyment at or after the death of the transferor. From this tax the executors appeal.
Appellants admit that there was a transfer, taxable under the statute, of some part or interest in this propery, but contend that such taxable transfer was not of the whole amount or interest in the property. The error which they allege on the part of the comptroller is that he assessed the tax in respect of the full value of the property, whereas they say he should have assessed it in respect of only some portion of that value less than the whole. (The evidence before the comptroller does not include sufficient facts to enable the precise portion to be definitely determined, but appellants estimate is roughly at one-third.)
The provisions of the trust deed (so far as they relate to the interests of beneficiaries thereunder), may be succinctly stated as follows:
A. During the life of the donor:
So much of the income as the trustees should deem proper was to be paid to or for the donor; for his personal use and for his maintenance and support, including the maintenance of a suitable residence for himself. His two daughters (Alice *Page 185 
and Elizabeth) were to have the right to live with him, without cost or charge for food or lodging.
If the trustees deemed the income insufficient for these purposes they were empowered to use so much of the corpus as they deemed necessary.
Any balance of income unexpended for these purposes was (by implication) to be accumulated.
B. For one year after the donor's death:
The income was to be paid to the two daughters in equal shares. If either should die during that year, her share was to go to her issue, if any, otherwise to the other daughter (or her issue).
C. At one year after the donor's death:
The corpus (plus any accumulated income) was to be paid in equal shares to the two daughters. If either were then dead her share was to be paid to her issue, if any, otherwise to the other daughter (or her issue).
D. No power of revocation was reserved to the donor.
It will be observed that during the donor's life he was to get the benefit of some portion of the income and the two daughters would probably get the benefit of some portion — the precise amounts being indefinite and left to the discretion of the trustees; that for one year after the donor's death the two daughters would probably get the income, and then would probably get the corpus.
It is the contention of appellants that this deed of trust amounted essentially to a complete gift of part of the property to the daughters, and a gift of the other part to them, to take beneficial effect at the donor's death, he meanwhile having the beneficial enjoyment during his life; and that the transfer is taxable only on the latter portion — the portion in which the donor had a reserved life estate; that the value of that portion should be ascertained and adjudged and the tax computed only on that value. *Page 186 
A transfer is of course taxable under the statute, even though it be in form absolute, complete, immediately effective, and direct to the donee, if in substance and effect the donor retains or gets back for his life, the income or enjoyment (or the equivalent thereof). Cf. In re Perry, 111 N.J. Eq. 176. But the taxability of a transfer is not limited to such circumstances, by the language of the act.
By the express terms of the statute, a transfer is made taxable if it is to take effect in possession or enjoyment at or after the transferor's death. By the terms of this deed of trust (disregarding contingencies) the legal title to the whole property is transferred immediately to trustees and three equitable estates or interests therein are created — one for the life of the donor, one for a year after his death, and lastly, the complete remainder thereafter. As to the last two, not only is it provided (and hence intended) that the actual legal transfers from the trustees to the beneficiaries shall not take place until after the donor's death, but obviously, considered even as vested equitable estates, they do not take effect in enjoyment until after the donor's death.
Under the terms of the deed, then, there is a transfer (or transfers) of the complete interest in the property from and after the grantor's death, not taking effect in enjoyment until after such death, and hence taxable by reason of the express words of the act — unless some exception is to be imported into the statute by implication.
In considering the possibility of such implied exception let us take a simplified hypothesis: a deed of trust whereby the donor, A, gives irrevocably and without other condition or contingency, an equitable life estate (for the donor's life) to B, and the equitable remainder (after the donor's life) to B, if he be then living, otherwise to C and his heirs.
The equitable remainder would be a transfer taxable under the words of the statute (as above shown); and it is of course true that the intent of the act is to tax the privilege of succession by the transferee. On the other hand, it is also true that there was no legislative intent to tax a bona fide complete, absolute, immediately effective gift inter vivos *Page 187 
(not made in contemplation of death); and that it is well established that the thing which is determinative as to the taxability of a given transfer, is the real substance and effect of the transaction as a whole, and not the technical form.
The primary theory and design of this taxing act was the collection of a tax on the privilege of one person to succeed to an interest in property owned by another, at the latter's death. To that end the tax was imposed upon such succession in the case of transfers at death, both testate and intestate. The tax was also imposed on certain transfers inter vivos. Obviously if an intending testator could accomplish by a transfer inter vivos
substantially the same result as by a testamentary disposition and at the same time avoid the tax, such transfer inter vivos
would in most instances be adopted and the taxing purpose largely frustrated. It is only reasonable therefore to conclude that the legislative intent and purpose in providing that the tax should be imposed also in the cases of transfers inter vivos specified in the statute, was to prevent the avoidance in this manner of the tax on testate or intestate transfers at death.
We may assume therefore that in and by the provisions of the third subsection of section 1 of the act the legislature intended that the tax should be imposed in all transfers inter vivos
which were made in the place and stead of testamentary dispositions; and we may even assume further (at least in the present argument) that the language of that subsection is completely effective to accomplish that intent. But from that same reasoning, coupled with the fact that there is no evidence, either in the statute itself or otherwise, of any intent or purpose to tax any gifts inter vivos for any other reason, it would seem an equally necessary or reasonable conclusion that the legislature did not intend to impose a tax in respect of any transfer inter vivos if such transfer was intended as a bonafide present gift and in nowise as a substitute for a testamentary disposition whereby the tax on a testamentary disposition would be avoided.
A testamentary disposition accomplishes a transfer to the desired beneficiary, of the beneficial ownership and enjoyment *Page 188 
of the property, at the death of the testator, at the same time reserving full beneficial ownership, control and enjoyment to the testator until his death (including the right to change his mind). A bona fide outright gift in praesenti effectuates an immediate transfer of ownership and enjoyment to the beneficiary, and reserves nothing thereof to the donor.
It is the aspect of the matter from the donor's end, however, which would seem to be of controlling importance in determining whether any particular gift inter vivos which is not the ordinary gift in praesenti, is a transfer in lieu of a testamentary disposition. The reason why a man makes a benefaction by will instead of by present gift is obviously in order that he may retain enjoyment during his life; he cannot retain this enjoyment without withholding it from the beneficiary; he has no other reason (unless in some exceptional instance) to keep the beneficiary from immediate enjoyment. If by a particular transfer, then, the donor retains enjoyment of the property during his life, the transfer would be in lieu of testamentary disposition; but if the donor is immediately and absolutely divested of all enjoyment, it would seem not to be in lieu of a testamentary disposition, even though the ultimate estate or interest is not received by the beneficiary until after the donor's death.
Concededly the statute neither purports, nor was intended, to tax an immediately effective gift of the absolute title to a property (unless in contemplation of death). Neither would a tax be collectible where the donor, A, gives to B a life estate for B's life and remainder at B's death to C; it is, of course, possible that B may survive A, but C's enjoyment of the remainder is not by the terms of the gift postponed until after the death of the donor, A.
Such postponement is not intended, and hence does not come within the terms of the statute. Neither does it come within the general object or design of the statute, for the transfer is not one in lieu of a testamentary disposition, but is a present gift, whereby the donor parts immediately and irrevocably with all interest in the property. If the legislature *Page 189 
had been concerned with the fact that the remainderman, C, might not come into possession or enjoyment until after the donor's death, it could readily have provided that a tax should be levied in that contingency. Its failure so to provide indicates that it was not so concerned.
The present effectiveness of the gift, so far as concerns the donor's parting with all title and enjoyment, is no greater in this last instance than in the hypothetical case with which we started — a gift by A to B for the life of the donor, A, and a remainder over at A's death. Why then should there be a tax on such remainder? In form, there is a gift to take effect at the death of the donor, but in practical effect and substance there is a complete, present gift of the entire estate whereby the donor is immediately divested of all interest and enjoyment therein — hence not a transfer in lieu of testamentary disposition.
It would seem, from what has heretofore been pointed out both as to the statutory provisions and the legislative purpose and design, that it was not intended to impose a tax in such a case, and that an implied provision in that behalf might well be deemed inherent in the act. Such a provision would make the statute read to this effect: that a tax is imposed upon a transfer intended to take effect in possession or enjoyment at or after the transferor's death, "provided the transferor retains or receives some interest or something substantially equivalent thereto, in such property," or "unless the transferor shall have parted completely and irrevocably with all interest in such property and does not in anywise receive anything substantially equivalent in exchange."
Such an implied provision however would not avoid the tax in the instant case. The transferor here did not divest himself of all interest in the property. For one thing there was the possibility of the entire property reverting to himself, because no beneficiaries were provided beyond his two daughters or their issue (if any), and both might predecease him without having or leaving issue. More important — he, in any event, retained a beneficial interest for his own life. *Page 190 
True, the amount of that interest, under the terms of the deed, was left to the discretion of the trustees, but those trustees were his two daughters and it is entirely probable that they would give him (and that he so expected) as much of the income as he wished. Even the right of the daughters to live at his house was not an absolute interest in the income; it was a mere option which they might not exercise. Both might marry and live elsewhere with their husbands.
The transfer is taxable under the language of the statute; it is not relieved of taxability even under the implied provision which has been discussed; and it does not appear that there is ground for amplifying such implied provision to the extent necessary to avoid the tax in the instant case. Neither does it appear that there was error in computing the tax on the full value of the property.
 The tax will be affirmed, with costs. *Page 191